Vontessa Ross         *   IN THE

Kendra Sumpter

356 Marydell Road       *   CIRCUIT COURT

Baltimore, MD 21229

                *   OF MARYLAND

    *On their own behalf and on behalf*

    *of all others similarly situated,*   *   FOR BALTIMORE CITY

    Plaintiffs         *   Case No.:

v.                 *   **24.C.19005228**

Twenty-Four/Seven Bail Bonds, LLC   *

3123 W. North Avenue

Baltimore, MD 21216       *

    Serve on resident agent:   *

    Randolph Smith

    3003 Windsor Avenue     *

    Baltimore, MD 21216

                *

and               *

Randolph Smith

3003 Windsor Avenue       *

Baltimore, MD 21216

                *

and

                *

Crum & Forster Indemnity Company

11490 Westheimer Rd., Ste. 300   *

Houston, TX 77077

                *

    Serve on:

    Maryland Insurance Administration   *

    200 St. Paul Place, Suite 2700

    Baltimore, MD 21202       *

and               *

Herbert A. Thaler, Jr.

201 N. Charles Street       *

Suite 2302

Baltimore, MD 21201       *

    Defendants

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Vontessa Ross and Kendra Sumpter ("Plaintiffs" or "Named Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "Class Members"), through their undersigned counsel, file this Class Action Complaint and Demand for Jury Trial and allege as follows:

### INTRODUCTION

1. Named Plaintiffs file this Complaint, seeking compensatory damages, as well as declaratory and injunctive relief, against Defendants Twenty-Four/Seven Bail Bonds, LLC ("Twenty-Four/Seven"), Randolph Smith ("Smith"), Crum & Forster Indemnity Company ("Crum & Forster") and Herbert A. Thaler ("Thaler") for failing to comply with Maryland law with regard to selling bail bonds and collecting on those bonds on behalf of an unlicensed bail bond company. Plaintiff Ross also alleges that Defendant Thaler violated the Federal Fair Debt Collection Practices Act by suing consumers on behalf of an unlicensed bail bond company.

2. One of Congress' findings which led to the passage of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* was that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3. In order to protect vulnerable consumers from unauthorized business practices, the bail bond industry is regulated through the licensing requirements of the Maryland Insurance Code.

2

4.     Maryland law requires that bail bond companies provide certain information to consumers when entering into installment agreements.

5.     By filing actions against Plaintiff and Class Members, Defendants have improperly sought the assistance of state courts to receive compensation to which they were not entitled, pursuant to Md. Code Ann., Ins. § 10-103(e), and to enforce contracts obtained through unauthorized business practices. *See Harry Berenter, Inc. v. Berman*, 258 Md. 290, 293 (1970).

6.     Plaintiff and Class Members suffered harm, including the assessment of a purported debt sum, interest, and costs (including attorney fees) against them.  The damage arose from Defendants' efforts to obtain judgments against Plaintiffs and Class Members through litigation, and payments collected through threat based on the threat of collection, when Defendants knew they had no right to such judgments, or payments, and which caused, actually and proximately, the injury for which the Class seek redress.

7.     In pursuing judgments to which they were not entitled, Defendants violated various state laws, including the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act.

8.     Given Defendants' actions and violations, Maryland law entitles Plaintiffs and the Class to compensatory damages, a declaratory judgment, and injunctive relief, along with their attorneys' fees and expenses.

9.     Defendants' violations of Maryland law have enriched Defendants unfairly at the expense of the Class.

10.     Defendants' failure to comply with Maryland law was done knowingly.

3

## PARTIES

11.     Plaintiff Vontessa Ross is an adult individual person residing in Baltimore City, Maryland. At all pertinent times hereto, she was a consumer, as she was seeking services, money or credit for personal, family or household purposes in the form of a bail bond for her daughter, which was the basis for a collection lawsuit against her.

12.     Plaintiff Kendra Sumpter is an adult individual person residing in Baltimore City, Maryland. At all pertinent times hereto, she was a consumer, as she was seeking services, money or credit for personal, family or household purposes in the form of a bail bond.

13.     Defendant Twenty-Four/Seven is a corporation organized under the laws of Maryland. Defendant Twenty-Four/Seven is a "collector" as defined by Md. Code Ann., Com. Law § 14-201.

14.     Defendant Crum & Forster is a corporation headquartered in Texas and organized under the laws of Delaware.

15.     Defendant Thaler is a Maryland attorney and solo practitioner with offices in Baltimore City, Maryland who regularly files suit and appears in Baltimore City, Maryland. Defendant Thaler is actively engaged in the business of collecting debts arising out of consumer transactions, including debts on behalf of Twenty-Four/Seven and is a "collector" as defined by Md. Code Ann., Com. Law § 14-201. He is a "debt collector" as defined by 15 U.S.C. § 1692a(6) as he regularly collects or attempts to collect debts owed to another.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Defendants Twenty-Four/Seven and Thaler pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102(a) because Defendants Twenty-Four/Seven and Thaler are located within Maryland and they are organized under the laws of

4

Maryland. This Court has jurisdiction over Defendants pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) because all Defendants transact business in Maryland.

17.     Venue is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201(a) in that Defendants transact business within Baltimore City and Ms. Ross was sued in Baltimore City.

18.     This Court has jurisdiction of this matter pursuant to Md. Rule 2-231 in order to facilitate management of multiple similar claims.  Maryland law does not permit class actions to be maintained in the district courts of Maryland.

19.     Declaratory and injunctive relief are available pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-401, et seq.

## FACTUAL ALLEGATIONS OF PLAINTIFFS

### The Money Bail System in Maryland

20.     Prior to the implementation of the amended Court Rule 4-216.1 on July 1, 2017, judges in Maryland routinely set money bail at amounts exceeding the means of criminal defendants. In a study of six jurisdictions conducted by the JFA Institute in 2013, 71 percent of criminal defendants had money bail set at the bail review hearing. Two-thirds of these defendants were unable to post their bonds and remained in jail.[1] In the five neighborhoods with the most jailed residents in Baltimore City, the average bail amount for low-risk defendants was $51,000.00, while the median income was $26,164.00.[2]

21.     Those who cannot afford to post the full bail amount must either sit in jail or purchase a bail bond from a licensed bail bonds entity to secure their release. Bail bonds are surety bonds, offered by local bail bond companies that are backed by an insurance corporation

---

[1] James Austin & Johnette Peyton, *Maryland Pretrial Risk Assessment Data Collection Study*, THE JFA INSTITUTE (2013).

[2] Clark, *supra* note 3, at 4.

as surety. The surety agrees to be indebted to the State in the amount of the full bond should the criminal defendant fail to appear.

22.    Bail bond companies charge a premium, a fee amounting to 10 percent of the total money bail set by the judge. Unlike a bond directly posted by a criminal defendant, which is returned to the defendant at the conclusion of the case, premiums collected by bail bond companies are non-refundable. Even if the defendant appears for every court hearing as required and even if the defendant is found not guilty of any crime, individuals remain indebted to the bail bond company for the full amount of the premium.

23.    Bail bond companies remit a percentage of the premium collected to sureties.

24.    Bail bond companies and sureties have long profited from the disproportionate impact of money bail on low-income African American neighborhoods in Baltimore City. From 2011 to 2015, companies charged $256 million in premiums to Maryland communities, of which $113 million were charged to residents of Baltimore City alone. More than $75 million in premiums were charged for cases that were ultimately resolved in District Court without any finding of wrongdoing.[3]

### Regulation of the For-Profit Bail Industry

25.    Sureties and bail bonds entities are regulated by the Maryland Insurance Administration. Sureties must receive a certificate of authority that authorizes them to conduct insurance operations in Maryland. *See* Md. Code Ann., Ins. § 4-101. Bail bonds entities comprise of both bail bond companies and individual bail agents who work for these companies. In order to operate in the bail bonding business in Maryland, both companies and agents must comply with two requirements. First, they must be licensed as insurance producers. Md. Code

---

[3] MD. OFFICE OF THE PUB. DEFENDER, *supra* note 2, at 9-10.

Ann., Ins. §§ 10-103(c)(1), 10-103(e)(1), 10-113(a), 10-304(a); *see also* Md. Code Ann., Ins. §

10-301. Second, they must receive an appointment from an authorized surety to sell, solicit, or

negotiate bail bonds on behalf of that surety as its agent. Md. Code Ann., Ins. §§ 1-101(f), 10-

103(c)(2), 10-103(d), 10-103(e)(2); *see also* Md. Rule 4-217(b)(2).

     26.    A bail bond company may not accept compensation for providing bail bonds

services unless it is licensed. Md. Code Ann., Ins. § 10-103(e). The Insurance Code also

requires bail bond companies to enter contracts using names that are licensed or registered. Md.

Code Ann., Ins. § 10-113(b).

     27.    In addition, in order to accept payments for the premium charged for a bail bond

in installments, the installment agreement must include (i) the total amount of the premium

owed, (ii) the amount of any down payment, (iii) the balance owed, (iv) the amount and due date

of each installment payment, and (v) the total number of installment payments required. Md.

Code Ann., Ins. § 10-309(c).

         **Background on Defendants' Practices**

     28.    At all relevant times, Defendant Crum & Forster was authorized to do insurance

business in Maryland, and appointed Defendant Twenty-Four/Seven to operate as its "authorized

agent" in the solicitation, sale, and negotiation of bail bonds to consumers. Md. Rule 4-

217(b)(2).

     29.    At all relevant times, Defendant Twenty-Four/Seven has engaged in the business

of providing bail bonds to individuals who have been jailed in the State of Maryland, including

Baltimore City. When Defendant Twenty-Four/Seven arranges for bail to be posted on behalf of

a jailed individual, Defendant Crum & Forster has acted as the surety that has appointed

Defendant Twenty-Four/Seven to act as its agent.

30.     On information and belief, Defendant Twenty-Four/Seven has employed standardized, uniform contracts and practices relevant to the allegations of this Complaint as further described in the paragraphs that follow.

31.     Defendant Twenty-Four/Seven charges a 10 percent premium in all contracts with consumers.  A portion of this premium collected is remitted to the surety underwriting the particular bail bond.

32.     On or about February 5, 2007, Randolph Smith entered into a Consent Order with the Maryland Insurance Commissioner, which detailed, among other things, Defendant Smith's failure to maintain payment plans for bail bond contracts ("Consent Order").

33.     On August 21, 2016, Twenty-Four/Seven's license with the Maryland Insurance Administration expired.

34.     At all relevant times, Twenty-Four/Seven did not have a valid license as required under Maryland law.

35.     Without the legal right or insurance license to do so, Twenty-Four/Seven, through its attorney, Defendant Thaler, files consumer debt collection actions to obtain judgments against consumers with alleged outstanding balances.

36.     Defendant Randolph Smith often signs the application and affidavit in support of the judgment in the collection actions and affirms under the penalties of perjury that the contents of the Complaint are true.

### Plaintiff Vontessa Ross and Kendra Sumpter's Interaction with Defendants

37.     On or about June 1, 2017, Plaintiff Vontessa Ross and Kendra Sumpter signed a contract with Twenty-Four/Seven in order to obtain the release of Ms. Sumpter ("Bail Bond Contract").

8

38.     Ms. Sumpter was held on a $50,000 bond. The premium charged by Twenty-Four/Seven was $5,000.

39.     At the time of the signing the Bail Bond Contract, Ms. Ross and Ms. Sumpter paid $900.00. Ms. Ross and Ms. Sumpter were not told that Twenty-Four/Seven was unlicensed.

40.     The Bail Bond Contract does not indicate the amount and due date of each installment payment or the number of installment payments to be made.

41.     Defendant Crum & Forster is listed as the surety in Ms. Sumpter's criminal case. Case No. 5B02354154.

42.     On June 9, 2017, an additional $100.00 payment was credited to Ms. Ross and Ms. Sumpter's account.

43.     On September 1, 2017, an additional $150.00 payment was credited to Ms. Ross and Ms. Sumpter's account.

44.     Despite knowing that as an unlicensed bail bond company, it was not entitled to enter into or collect payments on bail contracts, on June 2, 2019, Twenty-Four/Seven, through its attorney, Defendant Thaler, filed a consumer debt collection action in the District Court of Maryland for Baltimore City against Plaintiff Ross. Case No. 010100031202019 ("Ross Action").

45.     Defendant Randolph Smith signed the application and affidavit in support of the judgment in the Ross Action and affirmed under the penalties of perjury that the contents of the Complaint were true.

## CLASS ACTION ALLEGATIONS

46.     Named Plaintiffs Vontessa Ross and Kendra Sumpter bring this action individually and on behalf of all persons similarly situated.

9

47.     Class 1 consists of: All persons who have signed a bail bond contract with Twenty-Four/Seven Bail Bonds since October 15, 2016, while Twenty-Four/Seven Bail Bonds did not have a license issued by the Maryland Insurance Administration Commissioner to provide bail bondsman services.

48.     Subclass 1A consists of: All members of Class 1 who were sued by Defendant Herbert A. Thaler, Jr., acting as counsel for Defendant Twenty-Four/Seven Bail Bonds and were served with the lawsuit from October 15, 2018, to the present.

49.     Class 2 consists of: All persons who entered into installment agreements with Twenty-Four/Seven Bail Bonds since October 15, 2016, where the agreement failed to identify the amount and due date of each installment payment and the number of installment payments to be made.

50.     Subclass 2A consists of: All members of Class 2 who were sued by Defendant Herbert A. Thaler, Jr., acting as counsel for Defendant Twenty-Four/Seven Bail Bonds and were served with the lawsuit from October 15, 2018, to the present.

51.     Excluded from the Class are:

a.     those individuals who now are or ever have been employees of Defendants and the spouses, parents, siblings, and children of all such individuals; and

b.     any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of said bail bond contract.

52.     The Class, as defined above, is identifiable.  Named Plaintiffs are members of Class 1 and Class 2.  Named Plaintiff Ross is a member of Subclass 1A and 2A.

10

53.     As a part of its routine business practices in Maryland, Defendant Twenty-Four/Seven, operating as an unlicensed bail bond company, has systematically and regularly entered into contracts with Plaintiffs and Class Members.

54.     As a part of its routine business practices in Maryland, Defendant Twenty-Four/Seven, operating as an unlicensed bail bond company, has systematically and regularly filed lawsuits against Plaintiff Ross and Class Members.

55.     Upon information and belief, Defendant Crum & Forster has knowingly appointed and conferred power of attorney to Defendant Twenty-Four/Seven, operating as an unlicensed bail bond company, as its agent in the solicitation, sale, and negotiation of bail bonds.

56.     Defendant Crum & Forster has knowingly underwritten bail bonds procured by its agent Defendant Twenty-Four/Seven, operating as an unlicensed bail bond company.

57.     Defendant Crum & Forster has knowingly accepted remittances from premiums collected by its agent Defendant Twenty-Four/Seven, operating as an unlicensed bail bond company.

58.     Defendants Twenty-Four/Seven, Smith, and Thaler have knowingly assessed, demanded, and collected or attempted to collect on amounts to which they were unentitled from Plaintiffs and Class Members.

59.     Defendants Twenty-Four/Seven, Smith, and Thaler have made unlawful demands to Named Plaintiffs and the Class, have falsely represented to Named Plaintiffs and the Class that amounts were owed when Defendants had no legal right to collect payments or to file collection lawsuits, and have collected money from Named Plaintiffs and Class Members to which Defendants were not entitled.

11

60.     At all relevant times, Defendants Twenty-Four/Seven, Smith, and Thaler acted with actual knowledge or reckless disregard by accepting compensation for providing bail bonds services while Twenty-Four/Seven was unlicensed. *See* Md. Code Ann., Ins. § 10-103(e). Whether or not a bail bond company is licensed is a matter of public record. Moreover, Defendants Twenty-Four/Seven, Smith, and Thaler had actual knowledge that they were prohibited from seeking judgments under an unlicensed name, and that Named Plaintiff Ross and members of Subclass 1A and 2A were not liable for said judgments, but have nevertheless persisted in their unlawful billing and collection activities.

61.     As evidenced by the Consent Order, Defendants Twenty-Four/Seven and Smith knew they were required by law to provide installment agreements with certain terms to consumers entering into installment plans, but failed to do so.

62.     Unless and until this Court grants the declaratory and injunctive relief that Plaintiffs seek through this action, Defendants will continue to engage in business practices that violate Maryland law and result in profits to which Defendants are not entitled.

63.     Upon information and belief, the Class consists, at a minimum, of several hundred Maryland consumers and is thus so numerous that joinder of all members is impracticable. This allegation is based on the fact that Defendant Twenty-Four/Seven has filed hundreds of collection actions in state courts throughout the State of Maryland against Class Members.

64.     There are questions of law and fact that are not only common to the Class but that predominate over any questions affecting individual class members. The common and predominating questions include, but are not limited to:

12

a. Whether Defendant Twenty-Four/Seven was acting as an unlicensed bail bond company in its contracts with consumers, and in lawsuits it files against consumers;

b. Whether Defendant Twenty-Four/Seven failed to include information in its installment agreements with consumers required by law, including the amount and due date of each installment payment and the number of installment payments to be made;

c. Whether Defendants assessed, attempted to collect, and/or collected from Class Members amounts pursuant to contracts and lawsuits which Defendants had no legal right to demand or collect, and for which the Class Members were not liable;

d. Whether declaratory and injunctive relief is proper to prevent Defendants from continuing to assess, attempt to collect, and/or collect illegal amounts from Class Members; and

e. Whether the Class is entitled to a refund of all amounts paid to Defendants, as well as interest accrued and attorneys' fees.

65. Named Plaintiffs' claims are typical of the claims of the respective members of the Class within the meaning of Maryland Rule 2-231(b)(3), and are based on and arise out of similar facts constituting Defendants' wrongful conduct.

66. The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants within the meaning of Maryland Rule 2-231(c)(1)(A).

67. The actions of Defendant Twenty-Four/Seven are applicable to the Class as a whole.

13

68.     The actions of Defendant Crum & Forster are applicable to the Class as a whole.

69.     The actions of Defendants Smith and Thaler are applicable to Subclass 1A and 2A.

70.     Named Plaintiffs seek equitable remedies with respect to the Class as a whole within the meaning of Maryland Rule 2-231(c)(2).

71.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of this controversy within the meaning of Rule 2-231(c)(3). The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation and the fact that Defendants affirmatively misrepresent to consumers their rights and obligations under threat of collection activities.

72.     Plaintiffs' counsel are experienced in class actions and foresee little difficulty in the management of this case as a class action. Counsel from Santoni, Vocci, & Ortega, LLC have been appointed as Class Counsel in numerous class action cases representing consumers in both state and federal court.

73.     Named Plaintiffs are adequate representatives of the Class, have no interests antagonistic to the Class, and will fairly represent the interests of the Class in accordance with their affirmative obligations and fiduciary duties.

## COUNT ONE
### (Violation of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-202) Against All Defendants

74.     Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

14

75.     Md. Code Ann., Com. Law § 14-202(8) prohibits a debt collector from making any "[c]laim, attempt, or threat[] to enforce a right with knowledge that the right does not exist."

76.     Defendants Twenty-Four/Seven and Crum & Forster's actions in collecting and/or attempted to collect payments from Plaintiffs and Class Members when Defendant Twenty-Four/Seven was unlicensed as a bail bond company violate Md. Code Ann., Com. Law § 14-202(8), which prohibits a debt collector from making any "[c]laim, attempt, or threat[] to enforce a right with knowledge that the right does not exist."

77.     Defendants Twenty-Four/Seven and Crum & Forster's actions in collecting and/or attempted to collect payments from Plaintiffs and Class Members when Defendant Twenty-Four/Seven failed to include information in its installment agreements with consumers required by law, including the amount and due date of each installment payment and the number of installment payments to be made violate Md. Code Ann., Com. Law § 14-202(8), which prohibits a debt collector from making any "[c]laim, attempt, or threat[] to enforce a right with knowledge that the right does not exist."

78.     Defendants Twenty-Four/Seven, Smith and Thaler's actions in collecting and/or attempting to collect payments from Plaintiff Ross and Class Members pursuant to collection lawsuits violate Md. Code Ann., Com. Law § 14-202(8), which prohibits a debt collector from making any "[c]laim, attempt, or threat[] to enforce a right with knowledge that the right does not exist."

79.     Defendant Twenty-Four/Seven's contracts with Plaintiffs and Class Members concerned "real or personal property, services, money, or credit for personal, family, or household purposes." Md. Code Ann., Com. Law § 14-201(c).

15

80.     Defendants Twenty-Four/Seven, Smith and Thaler are "collectors" under Md. Code Ann., Com. Law § 14-201(b), as they attempted to collect and/or collected an alleged debt arising out of a consumer transaction.

81.     Defendant Crum & Forster is liable for the violations of Md. Code Ann., Com. Law § 14-202 committed by its "authorized agent," Defendant Twenty-Four/Seven.

82.     Plaintiffs have been damaged as described above. Members of the Class have suffered similar damages. Defendants are liable for such damages as well as reasonable attorneys' fees and costs.

## COUNT TWO
(Violation of Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301, *et seq.*)
Against Defendants Twenty-Four/Seven, Smith, and Crum & Forster

83.     Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

84.     Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Com. Law § 13-101, *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices regarding, among other things, the collection of consumer debts. Md. Code Ann., Com. Law § 13-303(5).

85.     Defendants Twenty-Four Seven and Smith are both "persons" under the CPA, Md. Code Ann., Com. Law § 13-101(h), and thus prohibited from engaging in unfair and deceptive trade practices.

86.     The CPA specifically prohibits Defendants from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers. Md. Code Ann., Com. Law § 13-301(1).

16

87.     The CPA further prohibits Defendants from failing to state a material fact if the failure deceives or tends to deceive. Md. Code Ann., Com. Law § 13-301(3).

88.     In violation of the CPA, Md. Code Ann., Com. Law § 13-301(1), Defendant Twenty-Four/Seven's representation to Named Plaintiffs and Class Members that it could sell bail bonds while it was an unlicensed bail bond company constituted a false statement or representation that had the effect of deceiving consumers.

89.     In violation of the CPA, Md. Code Ann., Com. Law § 13-301(3), Defendant Twenty-Four/Seven's omission of its unlicensed status constituted a failure to state a material fact that deceived Named Plaintiffs and Class Members.

90.     In violation of the CPA, Md. Code Ann., Com. Law § 13-303(5) and § 13-301(1), Defendants Twenty-Four/Seven, Smith and Thaler represented to Named Plaintiffs and Class Members that they were obligated to pay pursuant to contracts that were not legally enforceable.

91.     Defendants Twenty-Four/Seven, Smith and Thaler engaged in unfair and deceptive practices by attempting to collect and/or collecting on monies that, in fact, were not legally due and were not legally enforceable because Defendant Twenty-Four/Seven was unlicensed and failed to include information required by law in its installment agreements with consumers, and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, Md. Code Ann., Com. Law § 13-101 *et seq.*, including Md. Code Ann., Com. Law § 13-303(5), and §§ 13-301(1) and (3).

92.     A violation of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201, *et seq.*, is a *per se* violation of the CPA.

17

93.     As a result of Defendants Twenty-Four/Seven, Smith and Thaler's unfair and deceptive trade practices in violation of the CPA, Plaintiffs and Class Members were induced to make payments to Defendants in excess of what is legal, causing them injury or loss.

94.     Defendants acted knowingly while calculating, enforcing, collecting, and/or attempting to enforce and collect on lawsuits to which they were unentitled.

95.     Defendant Crum & Forster is liable for the violations of § 13-101 *et seq.*, committed by its "authorized agent," Defendant Twenty-Four/Seven.

96.     Plaintiffs and the members of the Class seek to recover damages and their attorneys' fees from Defendants.

## COUNT THREE
### (Violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.) Against Defendant Thaler

97.     Plaintiff Ross re-alleges and incorporates by reference the allegations set forth above, and further alleges:

98.     The FDCPA prohibits debt collectors from making a false representation regarding the legal status of any debt and using any false representation or deceptive means to attempt to collect any debt. 15 U.S.C. § 1692e(2) and (10).

99.     The FDCPA also prohibits debt collectors from using unfair means to collect a debt, including collecting any amount of a debt "unless the amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

100.    Defendant Thaler violated 15 U.S.C. §§ 1692e and 1692f when it sued Plaintiff Ross and members of Subclass 1A and 2A on behalf of an unlicensed bail bond company pursuant to contracts that were entered into by Twenty-Four/Seven when it was unlicensed.

101.    Defendant Thaler violated 15 U.S.C. §§ 1692e and 1692f when it sued Plaintiff Ross and members of Subclass 1A and 2A on behalf of an unlicensed bail bond company pursuant to contracts that were entered into by Twenty-Four/Seven when it was unlicensed.

102.    As a direct result of these violations, Plaintiff Ross and members of Subclass 1A and 2A suffered economic damages, including mileage and other expenses in defending against the collection actions.

103.    Plaintiffs also seek statutory damages as a result of Defendant's violations.

## COUNT FOUR
### (Restitution and Unjust Enrichment)
### Against All Defendants

104.    Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

105.    Defendants were not entitled to receive any benefit or payments from Plaintiffs and Class Members as a result of the contracts obtained by an unlicensed bail bond company.

106.    Defendants have known or should have known that Defendant Twenty-Four/Seven failed to obtain a license before seeking judgments against the Plaintiffs and Class Members.

107.    By paying money demanded by Defendants when Defendants had no legal right to collect money, Plaintiffs and Class Members conferred the benefit of these illegally demanded and collected charges upon Defendants.

108.    Defendants accepted the benefits conferred upon them by Plaintiffs and Class Members when they accepted the money paid toward illegally assessed amounts. Defendants were aware of, and had knowledge of, the benefits conferred on them, as they demanded those benefits.

109.     Defendants' collection, acceptance, and retention of the impermissible and illegal amounts when they were not entitled to those amounts as a matter of law is, was, and continues to be, unjust and inequitable.  Defendants should not be permitted to retain the benefits of those contracts, and their continued withholding of the illegal amounts is improper.

110.     Plaintiffs and Class Members conferred these unjust benefits upon Defendants after and as a result of Defendants' illegal misconduct as set forth in this complaint.

## COUNT FIVE
### (Declaratory and Injunctive Relief)
### Against all Defendants

111.     Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

112.     Plaintiffs seek a declaration individually and on behalf of the Class that Defendants are not entitled to attempt to collect any amounts pursuant to the contracts entered into with Twenty-Four/Seven.

113.     Plaintiffs seek a declaration individually and on behalf of the Class that any contracts entered into with Twenty-Four/Seven while it was an unlicensed bail bond company are unenforceable as a matter of law.

114.     Defendants should be ordered to disgorge all amounts that they have obtained from Plaintiffs and the Class.  The disgorged amounts are liquidated amounts.

115.     Defendants should be enjoined from attempting to collect and/or collecting any amounts from Plaintiffs and the Class pursuant to the contracts entered into between Twenty-Four/Seven and consumers.

116.    Defendants should be enjoined from attempting to collect and/or collecting any amounts from Plaintiffs and the Class pursuant to contracts entered into with Twenty-Four/Seven while it was an unlicensed bail bond company.

WHEREFORE, Plaintiffs pray that the following relief be granted to Plaintiffs and Class Members on their claims set forth above:

A.    The Court certify a class of persons as set forth herein or as may be amended, appoint Named Plaintiffs as Class Representatives, and appoint their counsel as Class Counsel;

B.    The Court enter a declaratory judgment establishing that Defendants are not entitled to attempt to collect any amounts pursuant to contracts between Twenty-Four/Seven and Plaintiffs or Class Members;

C.    The Court enter an order granting Plaintiffs and Class Members a preliminary and permanent injunction prohibiting Defendants from attempting to collect and/or collecting fees from Plaintiffs and Class Members pursuant to contracts between Twenty-Four/Seven and Plaintiffs or Class Members;

D.    The Court enter judgment in favor of Plaintiffs and Class Members and against Defendants, jointly and severally, in the amount of all sums paid by Plaintiff and Class Members pursuant to contracts between Twenty-Four/Seven and Plaintiffs or Class Members;

E.    The Court award statutory damages in the amount allowed by the FDCPA equal to $500,000.00 to the Class members;

F.   The Court award actual class damages in defending the collection lawsuits filed by Defendant Thaler on behalf of Defendant Twenty-Four/Seven;

G.   The Court award pre-judgment and post-judgment interest against Defendants, jointly and severally, on all sums awarded to Plaintiffs and Class Members;

H.   The Court award to Plaintiffs and Class Members reasonable attorneys' fees and the costs of these proceedings against Defendants, jointly and severally; and,

I.   The Court order such other and further relief as the nature of this case may require.

J.   In compliance with Maryland Rule 2-305, Plaintiffs state that they seek damages in excess of $75,000 on behalf of themselves and all others similarly situated.

Respectfully submitted,

Jane Santoni, CPF No. 8612010447
Matthew Thomas Vocci, CPF No. 0612130424
Chelsea Ortega, CPF No. 1212120342
Santoni, Vocci & Ortega, LLC
401 Washington Avenue, Suite 200
Towson, Maryland 21204
Phone: 443-921-8161
Fax: 410-525-5704
cortega@svolaw.com
*Attorneys for the Named Plaintiffs*
*and the Putative Class*

## NOTICE OF CLAIM FOR ATTORNEYS' FEES

Pursuant to Maryland Rule 2-703, Plaintiffs hereby give notice that they seek attorneys' fees in this case. Plaintiffs further state that as the case progresses, these fees could be substantial.

Jane Santoni

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, demand trial by jury on all issues of fact.

Jane Santoni